**McGUIRE OIL COMPANY, et al., Plaintiffs,**

v.

**MAPCO PETROLEUM, INC., et. al., Defendants.**

**Civ. A. No. 85–0378–AH.**

United States District Court, S.D. Alabama, S.D.

Feb. 13, 1991.

Supplemental Order March 5, 1991.

Denis Summers, Ezra Jones III and Richard O'Donnell of Summers, Jones & O'Donnell, Atlanta, Ga., David Conrad, Mobile, Ala., for plaintiffs.

J.P. Courtney, III, of Lyons, Pipes & Cook, Mobile, Ala., for defendants.

## ORDER

HOWARD, Chief Judge.

The plaintiffs brought suit against the defendant, Mapco Petroleum Inc, and its parent company, Mapco, Inc. ("Mapco") seeking damages and injunctive relief for selling gasoline at prices below costs in violation of the Alabama Motor Fuel Marketing Act ("AMFMA"), Ala.Code § 8–22–1, *et seq.* Mapco counterclaimed against the plaintiffs for allegedly conspiring to fix prices in violation of sections one and two of the Sherman Act and the AMFMA.

Mapco has moved for summary judgment on several grounds. First, Mapco argues that the plaintiffs have failed to establish three essential elements of the AMFMA—1) that Mapco had the requisite intent to substantially lessen or destroy competition; 2) that Mapco's below-cost sales had an injurious effect on competition; and 3) that the plaintiffs suffered any antitrust injury.

Mapco also contends that the AMFMA conflicts with general and specific policies of the federal antitrust laws and therefore is pre-empted. Finally, Mapco asserts the "good faith meeting competition" defense provided for in section 8–22–8(b) of the AMFMA as a complete defense against the plaintiffs' claims. The plaintiffs have moved for partial summary judgment on this issue on the grounds that a defendant who prices gasoline one or two cents below cost is not entitled to the meeting competition defense as a matter of law. The plaintiffs also have moved for summary judgment on Mapco's counterclaims on the grounds that Mapco lacks standing to bring

suit under the Sherman Act and the AMFMA.

## FINDINGS OF FACTS

1. The defendant Mapco is an independent oil company that sells only unbranded gasoline at three to four retail locations in Mobile, Alabama. (Joint Pretrial Order).

2. The plaintiff McGuire Oil Company ("McGuire") is a petroleum wholesaler primarily involved in the sale of branded gasoline to retail outlets in the State of Alabama. (Joint Pretrial Order).

3. The plaintiff Berwick Bay Oil Company is a petroleum jobber engaged in both the wholesale and retail sale of branded gasoline in Mobile County, Alabama. (Joint Pretrial Order).

4. The plaintiff Diamond Gasoline Stations, Inc. ("Diamond") primarily retails unbranded gasoline in Mobile County, Alabama. (Joint Pretrial Order).

5. Mapco's primary pricing policy has been to "match" the retail prices of other independents. At times, Mapco has sold its gasoline at a price one or two cents below the prices offered by branded gasoline retailers. (Depo. of James Alligood at 25).

6. There are approximately 400 retail gasoline outlets in Mobile County, Alabama. (Joint Pretrial Order).

7. The plaintiffs allege in their amended complaint that Mapco has violated the AMFMA by unlawfully retailing gasoline at prices "below cost" from January 1, 1985 until the present.

8. Mapco contends that it has a complete defense in the "meeting competition" defense of the AMFMA. Ala.Code § 8–22–8(b).

9. Mapco alleges in its counterclaim that the plaintiffs have conspired to fix prices in violation of sections one and two of the Sherman Act.

10. The plaintiffs contend that Mapco has not suffered any antitrust injury and therefore lacks standing to bring suit under the Sherman Act and the AMFMA.

## CONCLUSIONS OF LAW

1. Jurisdiction is properly before this Court pursuant to 28 U.S.C. § 1332.

2. Federal Rule of Civil Procedure 56 provides that summary judgment shall be granted:

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c).

Summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, ... on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

3. The intent of the Alabama legislature in enacting the AMFMA is to encourage fair and honest competition and to safeguard the public against the creation of monopolies or unfair methods of competition in transactions involving the sale of motor fuel in the wholesale or retail trades in Alabama and to prohibit the advertising or offering for sale of motor fuel below cost or at a cost lower than charged other persons on the same marketing level with the intent of injuring competitors or destroying or substantially lessening competition. Ala.Code § 8–22–3.

4. Intent to injure competition is not an essential element of a plaintiff's prima facie case under the AMFMA. *State Ex Rel. Galanos v. Mapco Petroleum,* 519 So.2d 1275 (Ala.1987).

5. A plaintiff bringing suit under the AMFMA must show both a sale below cost and an injurious effect on competition. *Mapco Petroleum,* 519 So.2d 1275.

6. Pre-emption of state laws are not favored in the absence of persuasive rea-

sons. *Chicago & N. Western Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 101 S.Ct. 1124, 67 L.Ed.2d 258 (1981).

7. To proceed under the federal antitrust laws and the AMFMA, a private plaintiff must first show that he has suffered "injury of the type the antitrust laws were designed to prevent and that flows from that which makes the defendant's act unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977).

## DISCUSSION

### A. AMFMA:

#### (1) *Intent:*

■ Mapco contends the plaintiffs have failed to establish certain essential elements of their prima facie case under the AMFMA. Relying on *MaGahee v. Northern Propane Gas Co.*, 858 F.2d 1487 (11th Cir.1988), Mapco first argues that the plaintiffs have failed to show that Mapco possessed the requisite intent to substantially injure or destroy competition. In that case, the plaintiff brought suit under section two of the Sherman Act for the defendant's alleged predatory pricing. The Eleventh Circuit stated "to withstand judgment as a matter of law, a plaintiff must have other evidence, either objective or subjective, of predatory intent." *Id.* at 1503. (citations omitted).

There is no dispute that *MaGahee* requires evidence of predatory intent as an essential element of a plaintiff's prima facie case under the Sherman Act. However, the present case involves an action under the AMFMA, not the Sherman Act, so *MaGahee* is not controlling.[1] To determine whether intent is an essential element under the AMFMA, the Court must first look to the language of the AMFMA itself. The AMFMA contains the following "Legislative declaration:"

It is further declared that the advertising, offering for sale, or sale of motor fuel below cost or at a cost lower than charged other persons on the same mar-

keting level *with the intent of injuring competitors or destroying or substantially lessening competition* is an unfair and deceptive trade practice ...

§ 8–22–3 (emphasis added).

Nevertheless, there is no mention of an intent requirement in section 8–22–6, the substantive section of the AMFMA. This section provides:

It shall be unlawful for any person engaged in commerce in this state to sell or offer to sell motor fuel below cost or to sell or offer to sell it at a price lower than the seller charges other persons on the same day and on the same level of distribution, within the same market area, where the effect is to injure competition.

Ala.Code § 8–22–6.

The Alabama Supreme Court resolved this ambiguity in *State Ex Rel. Galanos v. Mapco Petroleum*, 519 So.2d 1275 (Ala. 1987). There, the Court held that predatory intent is not an essential element of a plaintiff's prima facie case under the AMFMA despite the language of section 8–22–3. Instead, the Court determined that a plaintiff "proves a prima facie case when it proves a sale below cost *and* an injurious effect on competition ..." *Id.* at 1286 (emphasis added). Accordingly, the plaintiffs' failure to show that Mapco possessed the intent to substantially injure or destroy competition is not grounds for summary judgment and Mapco's motion for summary judgment is therefore DENIED.

#### (2) *Pre-emption:*

■ Mapco argues, alternatively, that if evidence of intent is not required under the AMFMA, it is inconsistent with *MaGahee* and thus preempted by federal law. To decide this issue, the Court must start from the premise that "[p]re-emption of state law by federal statute or regulation is not favored in the absence of persuasive reasons—either that the nature of the regulated matter permits no other conclusion, or that the Congress has unmistakably so or-

---

**1.** Mapco also argues that if evidence of intent is not required, the AMFMA is inconsistent with

federal law and is therefore pre-empted. *See* discussion of pre-emption, *infra*.

dained." *Chicago & N. Western Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 317, 101 S.Ct. 1124, 1130, 67 L.Ed.2d 258 (1981), quoting *Florida Lime & Avocado Growers Inc. v. Paul*, 373 U.S. 132, 142, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963).

■ To be sure, the Supreme Court has noted that instances of predatory pricing are rare. Accordingly, the Court has voiced concern over deterring pro-competitive behavior if inferences of predatory conduct are allowed to be easily drawn. *See Matsushita Elect. Indust. Co.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Thus, Mapco maintains that by not requiring evidence of predatory intent, the AMFMA "allows plaintiffs to brings claims barred by federal law as improperly curtailing legitimate price competition." However, the Supreme Court also has stated that "if an adverse effect on competition were, in and of itself, enough to render a state statute invalid, the States' power to engage in economic regulation would be effectively destroyed." *Exxon Corp. v. Governor of Maryland*, 437 U.S. 117, 133 n. 28, 98 S.Ct. 2207, 2218 n. 28, 57 L.Ed.2d 91 (1978).

The Court finds that there is no conflict between the AMFMA and the Sherman Act sufficient to require pre-emption. *Mapco* does not hold that evidence of a defendant's intent is irrelevant, but rather that the plaintiff does not bear the burden of proving such intent. Although federal law places this burden on the plaintiff, a defendant under the AMFMA is nevertheless afforded the opportunity to show that he lacked the intent to injure competition. Because the "teachings of [the Supreme] Court's decisions ... enjoin seeking out conflicts between state and federal regulation where none clearly exists," *Exxon*, 437 U.S. 117, 130, 98 S.Ct. 2207, 2216, quoting *Huron Portland Cement Co. v. Detroit*, 362 U.S. 440, 80 S.Ct. 813, 4 L.Ed.2d 852 (1960), the Court finds that Mapco's motion

for summary judgment on this ground is due to be and hereby is DENIED.

**(3)** *Injurious effect on competition:*

■ Even though intent is not an element of the AMFMA, the statute expressly prohibits a defendant from selling motor fuel below cost only *"where the effect is to injure competition."* Ala.Code § 8–22–6 (emphasis added). Mapco maintains that the plaintiffs failed to show that its pricing policy injured competition. The plaintiffs, on the other hand, point to the language in section 8–22–2(4) of the AMFMA which states that the below-cost selling of motor fuel is "inherently predatory." Based upon this section, the plaintiffs contend that predatory pricing constitutes a *per se* violation of the AMFMA regardless of its effect on competition. The Court finds the following language in *Mapco* controlling:

> [t]hese provisions [§ 8–22–3, § 8–22–6 and § 8–22–9] must be read *in pari materia,* and to the extent that the provisions of § 8–22–9 may be read to penalize acts *without a finding of both a sale below cost and an injurious effect upon competition,* such a construction is disapproved. To read these provisions literally and in isolation might well lead to a conclusion that they are unreasonably overbroad or void for vagueness....

*Mapco*, 519 So.2d at 1286.

Therefore, according to *Mapco*, a plaintiff has to show that a defendant's pricing below-cost, while presumptively predatory, had an actual injurious effect on competition.[2] In fact, the Court specifically stated that "[b]ecause the tenor of this Act [AMFMA] is to prevent monopolization and because the motor fuel marketing business has the potential for monopolization, we construe the statute as prohibiting sales below cost that tend to destroy or substantially lessen competition, not just those that are 'unfair.'" *Id.* at 1285. Thus, to survive summary judgment, the Court must determine whether a genuine issue of ma-

---

**2.** In fact, section 8–22–18 of the AMFMA, which allowed a plaintiff to establish a prima facie case by simply showing that the defendant marketer sold below the plaintiff marketer's cost, was struck down as unconstitutional in *Mapco*.

The Court stated: "[a] prima facie case is a legally sufficient case, and to penalize a person on no more basis than this would not be rationally related to the goal of safeguarding against monopolies." 519 So.2d at 1287.

terial fact exists as to whether or not Mapco's below-cost selling of motor fuel had an injurious effect on competition.

█ The plaintiffs then argue that the defendants' below cost selling of motor fuel injured competition in the Mobile area by selling gasoline below costs in an attempt to lure customers away from the plaintiffs and that they suffered damages in the form of lost profits. However, this claim involves injury to a competitor of Mapco, and therefore is irrelevant as to whether competition in the retail gasoline market has suffered due to Mapco's below-cost selling. *Accord Ghem, Inc. v. Mapco Petroleum, Inc.*, No. 3:89–0949 (M.D.Tenn. 1990).

Moreover, Mapco maintains that their minimal market share cannot, as a matter of law, have had a substantial injurious effect on competition.[3] During the time period at issue in this litigation, Mapco operated only four out of approximately four hundred retail gasoline stations in Mobile. Additionally, several of the plaintiffs have admitted that Mapco was not attempting to create a monopoly. (Depo. James McGuire II, Part I at 221; Depo. of Buddy Hendrix at 29–30).

The Court agrees with Mapco that the plaintiffs have failed to allege any actual injury to competition. Because the plaintiffs have failed to carry their burden of showing how Mapco has injured competition in the relevant market, Mapco's motion for summary judgment is due to be and hereby is GRANTED.[4]

B. Standing under the Sherman Act:

█ In their counterclaims against the plaintiffs, Mapco asserts that the plaintiffs have conspired to fix prices in violation of sections one and two of the Sherman Act and the AMFMA. The plaintiffs maintain that Mapco has failed to satisfy the antitrust injury standing requirement.

Mapco first argues that because price-fixing agreements are considered *per se* violations of the Sherman Act, the antitrust injury requirement should not apply. *Atlantic Richfield Co. v. U.S.A. Petroleum Co.*, 495 U.S. ——, 110 S.Ct. 1884, 109 L.Ed.2d 333 (1990), is directly on point. There, the Supreme Court held that allegations of a price-fixing conspiracy did not automatically satisfy the antitrust injury requirement. In fact, the Court determined that in order for a price-fixing conspiracy to cause a competitor antitrust injury it must result in predatory pricing. *Id.* In this case, Mapco alleges that the plaintiffs conspired to fix prices at an artificially high level rather than the low level associated with predatory pricing. As the Supreme Court recognized in *Atlantic Richfield*, competitors only stand to gain from this type of price-fixing conspiracies due to the increased differential in their own low prices and those of the conspirators.

█ Mapco next contends it has suffered antitrust injury as a result of costs incurred in bringing this lawsuit as well as lost profits. In recognizing that the antitrust laws do not "provide a remedy . . . for all injuries that might conceivably be traced to antitrust violations," *Hawaii v. Standard Oil Co.*, 405 U.S. 251, 263 n. 14, 92 S.Ct. 885, 891 n. 14, 31 L.Ed.2d 184 (1972), the Supreme Court developed a rigorous standing analysis referred to as the antitrust injury requirement. Under this requirement, a private plaintiff must show "injury of the type the antitrust laws were intended to prevent and that flows from that which makes the defendant's act unlawful." *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477, 489, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977).

---

3. Despite the language in the AMFMA which creates a presumption that below-cost selling is predatory, the Supreme Court has stated that "courts should not find allegations of predatory pricing credible when the alleged predator is incapable of successfully pursuing a predatory scheme. *Cargill, Inc., v. Montfort of Colorado*, 479 U.S. 104, 119, n. 15, 107 S.Ct. 484, 494, n. 15, 93 L.Ed.2d 427 (1986).

4. For this reason, the Court need not address whether Mapco would be entitled to the good faith meeting competition defense. The issue of whether the AMFMA contains an antitrust injury requirement is discussed *infra*.

The Supreme Court has made it clear that the antitrust laws were enacted for "the protection of *competition* not *competitors.*" *Brown Shoe Co. v. United States,* 370 U.S. 294, 320, 82 S.Ct. 1502, 1521, 8 L.Ed.2d 510 (1962) (emphasis in original). Thus, lost profits and expenses incurred as a result of litigation hurt only the competitor, not competition. *See Brunswick, supra.* Because Mapco's alleged antitrust injuries are not the type the antitrust laws were designed to prevent, nor flow from that which makes the plaintiffs' act unlawful, the plaintiffs' motion for summary judgment on the Sherman Act claim is GRANTED.

C. Standing under the AMFMA:

■ Because the Court has already determined that Mapco has not suffered any antitrust injury, the only question left to resolve is whether the AMFMA contains an antitrust injury requirement. Section 8–22–17 contains the pertinent standing language:

> [A]ny persons injured as a result of an act or practice which violates this chapter may bring a civil action for appropriate relief, including an action for declaratory relief, injunctive relief, and for damages.

§ 8–22–17(b).

Although this section does not expressly require a plaintiff to prove that it has suffered "antitrust" injury, it does require a plaintiff to be "injured" as a result of the defendants' unlawful acts. Similarly, the language of section 4 of the Clayton Act limits standing to a "person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws." 15 U.S.C. § 15.

The Supreme Court most recently articulated the purpose of requiring proof of antitrust injury in *Atlantic Richfield, supra.* There, the Court stated that the antitrust injury requirement "ensures that the harm claimed by the plaintiff corresponds to the rationale for finding a violation of the antitrust laws in the first place, and it prevents losses that stem from competition from supporting suits by private plaintiffs for either damages or equitable relief."

110 S.Ct. at 1900. *See also Ghem, supra* ("the rationale behind imposing an antitrust injury requirement is equally applicable to a private damages suit under the below-cost sales provisions of the [Tennessee Petroleum Trade Practices Act.] In *Ghem,* the plaintiff argued that since all instances of below-cost pricing were considered predatory under the state statute, the Court must find antitrust injury. The Court disagreed and found that the plaintiffs' allegations did not "even suggest an injury to competition in the relevant market for unleaded gasoline." *Id.* at 14.

The Court interprets the language in section 8–22–17(b) of the AMFMA as requiring a plaintiff to show a causal nexus between the defendant's unlawful act and the plaintiff's injuries. Because Mapco has failed to show this essential element, the plaintiffs' motion for summary judgment on Mapco's AMFMA claim is GRANTED.

### SUPPLEMENTAL ORDER

This cause is before the Court on the plaintiff McGuire Oil's letter brief dated February 27, 1991 requesting this Court to clarify its order dated February 13, 1991. In its February 13th order, the Court granted the defendant's motion for summary judgment on all of the plaintiff's claims and the plaintiff's motion for summary judgment on the defendant's counterclaims under the Sherman Act and the Alabama Motor Fuel Marketing Act. Apparently, the order did not address Counts II and III of Mapco's counterclaims which are based on the Robinson–Patman Act, 15 U.S.C. § 13(a), and the Alabama Unfair Trade Practices Act, Ala. Code § 8–10–1 et seq. The Court will address these issues below and in doing so adopts the Finding of Facts and Conclusions of Law set forth in its order of February 13, 1991.

I. THE ROBINSON–PATMAN ACT:

■ Section 2 of the Clayton Act, 15 U.S.C. § 13(a), as amended by section one of the Robinson–Patman Act, "prohibits certain kinds of price discriminations, and allied activities, on the part of those engaged in domestic or territorial commerce." *Nashville Milk Co. v. Carnation Co.,* 355 U.S. 373, 376, 78 S.Ct. 352, 354, 2 L.Ed.2d

340 (1957). Although the Robinson–Patman Act consists of four sections, only section one is regarded as amendatory of the Clayton Act. *Id.* at 377, 78 S.Ct. at 354. This fact is significant because section four and section sixteen of the Clayton Act allow private causes of action only for injuries resulting from practices forbidden by "the antitrust laws" as defined in section one of the Clayton Act. *Id.* at 375, 78 S.Ct. at 353. Section one of the Clayton Act has not been amended to include all sections of the Robinson–Patman Act among those laws defined as "the antitrust laws."[1] *Id.* Thus, because section one of the Robinson–Patman Act is the only section regarded as amendatory to the Clayton Act, it is the only Robinson–Patman section which allows a private cause of action to proceed under sections four or sixteen of the Clayton Act. *Id.* at 377, 78 S.Ct. at 354.

Because a private plaintiff suing for violations of 15 U.S.C. § 13(a) has standing to proceed under the "antitrust laws" through sections four and sixteen of the Clayton Act, the standing requirement applicable to section four and section sixteen is equally applicable to 15 U.S.C. § 13(a). In its order dated February 13, 1991, the Court determined that Mapco lacked standing to sue under the Sherman Act because it failed to show that it had suffered the requisite antitrust injury. Because 15 U.S.C. § 13(a) is amendatory to the Clayton Act, McGuire lacks standing under this provision for the same reason it lacks standing under the Sherman Act. Accordingly, McGuire's motion for summary judgment on the Robinson–Patman claim is GRANTED.

## II. THE ALABAMA UNFAIR TRADE PRACTICES ACT:

 The Alabama Unfair Trade Practices Act (AUTPA) contains three sections set forth at § 8–10–1 et seq. of the Alabama Code. All three sections contain only penal sanctions for violations of its provisions. There is no provision anywhere in these sections giving a litigant a private cause of action. In the absence of a clear expression of legislative intent to the contrary, these sanctions should be considered exclusive. Because, Mapco is not entitled to sue under the AUTPA, McGuire's motion for summary judgment on this claim is GRANTED.

---

1. Section one of the Robinson–Patman Act is the exception since it expressly amends section two of the Clayton Act. The Clayton Act, of course, is included as one of "the antitrust laws" in section one of the Clayton Act. *See* 355 U.S. at 376, 78 S.Ct. at 354, citing 49 Stat. 1526, 15 U.S.C. 13(a).