McGUIRE OIL COMPANY, Berwick Oil Company, Inc., and Diamond Gasoline Stations, inc., Plaintiffs–Counterclaim–Defendants–Appellants, Cross–Appellees,

v.

MAPCO, INC., Defendant–Counterclaim–Plaintiff–Appellee,

Mapco Petroleum, Inc., d/b/a "Western," Defendant–Counterclaim–Plaintiff–Appellee, Cross–Appellant.

No. 91–7235.

United States Court of Appeals, Eleventh Circuit.

April 24, 1992.

Summers & Jones, P.C., W. Dennis Summers, Ezra B. Jones, III, Atlanta, Ga., for McGuire Oil Co.

Alphonse M. Alfano, Roy F. Dunshee, Bassman, Mitchell & Alfano, Chtd., Washington, D.C., for amicus curiae, The Petroleum Marketers Assoc. of America.

Wesley Pipes, J.P. Courtney, III, Lyons, Pipes & Cook, P.C., Mobile, Ala., Richard A. Feinstein, McKenna & Cuneo, Washington, D.C., for Mapco, Inc., and Mapco Petroleum, Inc.

Before KRAVITCH, ANDERSON and BIRCH, Circuit Judges.

KRAVITCH, Circuit Judge:

McGuire Oil Company, Delta Oil Company [1] and Diamond Gasoline Stations ("plaintiffs" or "appellants") brought suit in the Circuit Court of Mobile County, Alabama, against Mapco, Inc.,[2] and Mapco Petroleum, Inc. ("Mapco"), seeking damages and injunctive relief for Mapco's violations of the Alabama Motor Fuel Marketing Act ("AMFMA"), Ala.Code § 8-22-1, *et seq.* Mapco removed the case to federal district court on diversity grounds and counterclaimed against the plaintiffs, alleging violations of the Sherman Anti-Trust Act, 15 U.S.C. § 1 *et seq.*, the Robinson–Patman Price Discrimination Act, 15 U.S.C. §§ 13, 13b, 21a, the AMFMA and the Alabama Unfair Trade Practices Act ("AUTPA"), Ala. Code § 8-10-1, *et seq.*

The district court granted summary judgment in favor of Mapco on plaintiffs' AMFMA claim and summary judgment in favor of the plaintiffs on Mapco's counterclaim. 763 F.Supp. 1103 (S.D.Ala.1991). The court also denied plaintiffs' motion for sanctions under Rule 11 of the Federal Rules of Civil Procedure. Plaintiffs appeal the district court's summary judgment on their AMFMA claim and the court's denial of their Rule 11 motion. Mapco appeals the court's grant of summary judgment on its counterclaim. We affirm the district court's grant of summary judgment on Mapco's counterclaim, as well as the court's denial of plaintiffs' motion for Rule 11 sanctions. We certify to the Alabama Supreme Court questions of law determinative of plaintiffs' claims under the AMFMA.

## I. BACKGROUND

Appellants are petroleum wholesalers or "jobbers" engaged in the wholesale and retail sale of branded gasoline. Mapco Petroleum, a wholly owned subsidiary of Mapco, Inc., is a Delaware corporation, qualified to do business in Alabama, that is engaged in the retail sale of unbranded petroleum products in Alabama. At all times relevant to this dispute, Mapco sold its products at three or four retail locations in the Mobile, Alabama area. It is unclear how many retail gasoline outlets exist in Mobile.

On May 8, 1984, the Alabama Legislature passed the AMFMA, section 6 of which states:

[i]t shall be unlawful for any person engaged in commerce in this state to sell or offer to sell motor fuel below cost or to sell or offer to sell it at a price lower than the seller charges other persons on the same day and on the same level of distribution, within the same market area, where the effect is to injure competition.

Ala.Code § 8-22-6. Subsequent to the enactment of the AMFMA, the plaintiffs, who, as members of the Alabama Oilmen's Association ("AOA"), were instrumental in

---

1. By stipulation of the parties, Berwick Oil Co. subsequently replaced Delta Oil Co. in this lawsuit. R8–165.

2. By stipulation of the parties, Mapco, Inc. was dismissed from this lawsuit. *Id.*

the Act's passage, began to monitor the sales of gasoline in the Mobile area to discover any below-cost sales of gasoline. As a general matter, Mapco alleges that representatives of the plaintiffs contacted those gasoline sellers perceived by plaintiffs as selling gas below cost and demanded that they raise their gas prices above cost, threatening litigation under the AMFMA if they did not comply. *See, e.g.,* McGuire Depo., Folder 3, at 203–206; R10–180.

Mapco in particular became the object of plaintiffs' efforts. As alleged by plaintiffs and admitted by Mapco, Mapco was selling gas one to two cents below cost at its Old Shell Road and St. Stephen's Road retail outlets during January, 1985. As alleged by Mapco and admitted by plaintiffs, plaintiffs initiated a series of contacts with Mapco in an effort to get it to cease its below-cost pricing.

For example, Angie Sullivan, a pricing coordinator for Mapco, testified that she received telephone calls from James McGuire of appellant McGuire Oil alerting Sullivan to Mapco's possible violation of the AMFMA, requesting Mapco to raise prices and threatening litigation if Mapco did not comply. Sullivan Depo., Folder 2, at 128–131. Larry Hill, area manager for Mapco, testified that he received similar communications, Hill Depo., Folder 4, at 48–51, 84–87, as did Joe Lassiter, the Store Manager of Mapco's Old Shell Road location. *Id.* Plaintiffs' attorney wrote James Murl Kennamore, Mapco's General Manager, concerning Mapco's below-cost pricing. Kennamore Depo., Folder 7, at 107–109. Plaintiffs also contacted Mapco and other suspected below-cost sellers of gas through the AOA, which demanded that those sell-ers increase their prices or face litigation. Boom Depo., Folder 2, at 29.

## II. COURSE OF PROCEEDINGS

Having failed to convince Mapco to increase its prices, plaintiffs filed suit in state court on March 14, 1985, alleging Mapco's violation of section 6 of the AMFMA and seeking injunctive relief, compensatory damages [3] and punitive damages in the amount of $7.5 million under section 17(b) of that statute. Defendants removed the case to federal district court on March 14, 1985, and subsequently filed an answer, contending, *inter alia,* that the AMFMA violated the United States and Alabama Constitutions.

The parties agreed to stay the proceedings pending determination by the Alabama Supreme Court of the constitutionality of the AMFMA under federal and state law. That court upheld the AMFMA's constitutionality in *State ex rel. Galanos v. Mapco Petroleum Co.,* 519 So.2d 1275 (Ala.1987).

On or about July 1988, the parties entered into a stipulation whereby Mapco agreed to raise its gas prices pending resolution of the lawsuit. In the six months following execution of the stipulation, Mapco lost a considerable amount of its sales volume.

On July 29, 1988, Mapco counterclaimed against the plaintiffs, seeking $4 million in compensatory damages and $40 million in punitive damages. Mapco contended that plaintiffs, by giving Mapco a "Hobson's choice" between raising its prices and enduring vexatious and costly litigation, had conspired to fix gas prices in violation of section 2 of the Sherman Anti–Trust Act, the Robinson–Patman Act, the AUTPA and the AMFMA.[4]

---

**3.** Plaintiffs subsequently amended their complaint to include allegations of below-cost pricing undertaken by Mapco after the initial filing of plaintiffs' action. All told, plaintiffs alleged that between May 1, 1984 and December 31, 1988, Mapco had sold gasoline below cost for 596 days at its Old Shell Road retail location and for 821 days at its St. Stephens Road retail location. Plaintiffs now estimate their losses incurred as a result of Mapco's pricing activities at $250,000. Plaintiffs seek treble damages under the AMFMA. Ala.Code § 8–22–17(b).

**4.** Mapco's federal antitrust claims actually came under § 4 of the Clayton Act, 15 U.S.C. § 15, which makes available treble damages to "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws." Plaintiffs' alleged violations of the Sherman Act and the Robinson–Patman Act furnish the factual and legal predicates for Mapco's Clayton Act claim.

At the close of discovery, Mapco moved for summary judgment on plaintiffs' AMFMA claim, arguing that Mapco's actions were covered by the "meeting competition" defense contained in section 8 of the AMFMA; that Mapco had not acted with the intent to injure competition required by the AMFMA; that Mapco had in fact not injured competition, as required by the AMFMA; and that the AMFMA was preempted by federal antitrust law.[5]

Plaintiffs moved for summary judgment against Mapco on the latter's counterclaim, arguing that Mapco lacked standing to bring claims under the Sherman Act, the Robinson–Patman Act and the AMFMA; that the AUTPA did not confer a private right of action; and that Mapco's federal antitrust counterclaims were barred by the *Noerr–Pennington* doctrine. Plaintiffs also moved for sanctions against Mapco under Fed.R.Civ.P. 11 for Mapco's failure to make a reasonable inquiry into the facts or the law before filing its counterclaim.

In an order dated February 13, 1991, the district court granted summary judgment in favor of Mapco on plaintiffs' AMFMA claim, and granted summary judgment in favor of the plaintiffs on Mapco's Sherman Act and AMFMA counterclaims. *McGuire Oil Company, et al. v. Mapco Petroleum, Inc.*, 763 F.Supp. 1103 (S.D.Ala.1991).

Regarding plaintiffs' AMFMA claim, the court rejected Mapco's argument that the plaintiffs failed to show that Mapco acted with the requisite intent to injure competition, concluding that intent to injure competition was not an element of an AMFMA plaintiffs' case. *Id.* at 1106. The court, however, held that the AMFMA requires plaintiffs to prove "injury to competition," not simply "injury to competitors," and that, given Mapco's insignificant market share in the Mobile area, plaintiffs had failed to prove that Mapco's below-cost pricing had injured competition. *Id.* at 1107–08. The court did not reach the issue of whether Mapco's actions were protected

under the AMFMA's "meeting competition" exception.

Regarding Mapco's counterclaim, the court held that Mapco lacked standing under the Sherman Act in light of its failure to establish antitrust injury, as that term has been interpreted by the United States Supreme Court in *Atlantic Richfield Co. v. U.S.A. Petroleum Co.*, 495 U.S. 328, 110 S.Ct. 1884, 109 L.Ed.2d 333 (1990) ("*ARCO*"). *Id.* at 1108–09. The court further concluded that Mapco failed to establish a causal relationship between its injuries and plaintiffs' alleged AMFMA violations sufficient to give Mapco standing under that statute. The court did not address whether plaintiffs were immune from Mapco's federal antitrust counterclaims under the *Noerr–Pennington* doctrine.

In a supplemental order dated March 5, 1991, the court also granted summary judgment against Mapco on its Robinson–Patman Act claim and its claims under the AUTPA. The court held that Mapco lacked standing under the Robinson–Patman Act for the same reasons it lacked standing under the Sherman Act. *Id.* at 1109–1110. The court also concluded that the AUTPA did not provide for a private right of action, thereby barring Mapco's claim under that statute. *Id.* at 1110. Finally, in an order dated March 8, 1991, the court denied plaintiffs' motion for Rule 11 sanctions against the defendant.

Plaintiffs appeal the district court's grant of summary judgment in favor of Mapco on plaintiffs' AMFMA claim. Plaintiffs argue that the district court erred by imposing the legal standards applicable to federal antitrust legislation on the AMFMA, which, plaintiffs contend, was enacted to provide relief against certain pricing activities that could not be attacked under federal antitrust law. In particular, plaintiffs contend that the court erred in requiring plaintiffs to prove that Mapco's below-cost pricing had the effect of injuring competition; the AMFMA, plaintiffs argue, is unlike federal antitrust law, in that

---

**5.** The district court rejected Mapco's preemption argument, and Mapco has not raised it on appeal.

it prohibits below-cost pricing that injures competition *or* that injures competitors. Further, plaintiffs argue that they did indeed show injury to competition as that term is treated under existing Alabama law, and that the district court erred in holding that Mapco possessed a market share insufficient to injure competition. Finally, plaintiffs argue that the district court correctly rejected Mapco's argument on the issue of intent to injure competition, and that Mapco was not entitled to assert the "meeting competition" defense included in the AMFMA.

Plaintiffs also appeal the court's denial of their motion for Rule 11 sanctions, arguing that Mapco brought its counterclaim without any basis in law or fact and without having inquired reasonably into the basis for such a claim.

Mapco appeals the district court's grant of summary judgment on its counterclaim, arguing that the United States Supreme Court's decision in *ARCO* applies only to antitrust defendants allegedly engaged in a vertical maximum price fixing conspiracy. Mapco argues that in this case, plaintiffs not only engaged in a horizontal conspiracy to fix minimum prices, but forced Mapco to adhere to those prices by threatening vexatious and retaliatory litigation. Thus, Mapco contends, it sustained antitrust injury under federal antitrust law [6] and the AMFMA as a result of having to raise its prices to the levels set by plaintiffs and thereby losing its competitive advantage over retailers of branded products. Mapco also contends that the AUTPA does in fact confer a private right of action on Mapco. Finally, Mapco argues that plaintiffs are not entitled to antitrust immunity under the *Noerr–Pennington* doctrine.

As noted *supra*, we certify to the Alabama Supreme Court questions of law determinative of plaintiffs' AMFMA claim. We affirm the district court's grant of summary judgment to plaintiffs on Mapco's counterclaim, and its denial of plaintiffs' motion for Rule 11 sanctions.

## III. STANDARD OF REVIEW

■ We review *de novo* a district court's grant of summary judgment, *Hoffman v. Allied Corp.*, 912 F.2d 1379, 1383 (11th Cir.1990), applying the same legal standards that bound the district court. *Earley v. Champion Intern. Corp.*, 907 F.2d 1077, 1080 (11th Cir.1990). We must resolve in favor of the non-moving party all genuine factual disputes. *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir.1987).

## IV. MAPCO'S COUNTERCLAIM

In essence, Mapco claims that the plaintiffs engaged in a concerted effort to establish minimum prices for gasoline in the Mobile area, and that this effort manifested itself in threats and coercion of those independent retailers, like Mapco, who sought to preserve their market share by pricing gas one or two cents below major brand gas prices. Mapco claims that this effort constituted an anticompetitive price-fixing conspiracy in violation of the Sherman Act, the AMFMA and the AUTPA.

We affirm the district court's grant of summary judgment on Mapco's counterclaim. Mapco's claims under the Sherman Act are barred by the immunity granted plaintiffs under the *Noerr–Pennington* doctrine.[7] Further, Mapco has no cause of action under the AUTPA. Finally, Mapco lacks standing to bring its claims under the AMFMA.

### A. *Mapco's Sherman Act Counterclaim*

■ A private plaintiff proceeding under section 4 of the Clayton Act must prove (1) violation of the antitrust laws, (2) cognizable injury attributable to the violation, and (3) at least the approximate amount of the

---

6. Mapco does not appeal the district court's grant of summary judgment on its Robinson–Patman Act counterclaim. Thus, the only federal antitrust issue before us relates to Mapco's claim under the Sherman Act.

7. Accordingly, we do not reach the issue on the basis of which the district court granted summary judgment for the plaintiffs on Mapco's Sherman Act counterclaim—*i.e.*, whether Mapco established its antitrust injury sufficient to give it standing under the Sherman Act.

damage. *Malcolm v. Marathon Oil,* 642 F.2d 845, 852 (5th Cir. Unit B 1981).[8]

Mapco alleges that plaintiffs' conduct satisfied the first prong of this requirement because they engaged in a concerted effort to force Mapco to raise its prices. It claims that plaintiffs, individually, jointly or through the umbrella organization of the AOA, contacted various Mapco representatives in an effort to get Mapco to raise its prices, threatening and ultimately initiating litigation under the AMFMA in response to Mapco's unwillingness to abide by plaintiffs' demands.

The allegations in Mapco's counterclaim reveal the degree to which plaintiffs' threats and ultimate initiation of litigation constituted the concerted action that Mapco viewed as violative of the Sherman Act. Paragraph seven of the counterclaim states that plaintiffs "have continuously since the enactment of [the AMFMA] conspired, contracted, formulated and implemented a scheme to control the competitive pricing of motor fuel in the State of Alabama through the use of veiled and unveiled threats of litigation under and pursuant to the provisions of the AMFMA." R3–68–¶ 7. Paragraph ten of the counterclaim reiterates that "the [plaintiffs] have sought to drive Mapco out of the business of selling gasoline at retail in the State of Alabama through massive and concerted threats of litigation and institution of litigation under the pretext of the enforcing of the provisions of the AMFMA." *Id.* at ¶ 10. *See also id.* at ¶¶ 11, 14, 15 and 17. In essence, therefore, Mapco claims that plaintiffs violated the Sherman Act by engaging in concerted efforts to threaten and initiate litigation against Mapco under the AMFMA for the anti-competitive purpose of forcing Mapco to raise its prices. We assume *arguendo* that plaintiffs' actions did indeed amount to a horizontal price-

fixing conspiracy, which in general is a *per se* offense under the Sherman Act. *See NCAA v. Board of Regents of University of Oklahoma,* 468 U.S. 85, 100, 104 S.Ct. 2948, 2959, 82 L.Ed.2d 70 (1984) (horizontal price fixing is "perhaps the paradigm of an unreasonable restraint of trade").

### *The Noerr–Pennington Doctrine*

In *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961), and *United Mine Workers v. Pennington,* 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965), the Supreme Court determined that "[j]oint efforts to influence public officials do not violate the antitrust laws even though intended to eliminate competition." *Pennington,* 381 U.S. at 670, 85 S.Ct. at 1593. Under the *Noerr–Pennington* doctrine, therefore, "the federal anti-trust laws do not regulate the conduct of private individuals in seeking anti-competitive action from the government." *City of Columbia v. Omni Outdoor Advertising, Inc.,* — U.S. —, —, 111 S.Ct. 1344, 1354, 113 L.Ed.2d 382 (1991). Concerted action that would ordinarily constitute a conspiracy violative of the Sherman Act does not do so if such action is directed toward influencing governmental bodies. *Coastal States Marketing, Inc. v. Hunt,* 694 F.2d 1358, 1366 (5th Cir.1983) ("the Sherman Act, as interpreted by *Noerr,* simply does not penalize as an anti-trust violation the petitioning of a government agency").[9] Although the Court initially created *Noerr–Pennington* immunity in the context of efforts to influence administrative or legislative officials, it later extended the doctrine to immunize from anti-trust liability attempts to influence adjudicative bodies. *See California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d

---

**8.** The Eleventh Circuit has adopted as binding precedent decisions of Unit B of the former Fifth Circuit. *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33 (11th Cir.1982).

**9.** Under the Sherman Act, *Noerr–Pennington* immunity is not merely an affirmative defense. Rather, "the antitrust plaintiff has the burden of establishing that the defendant restrained trade

unreasonably, which cannot be done when the restraining action is that of the government." P. Areeda and H. Hovenkamp, *Antitrust Law,* § 203.4c (1990 supp.). Thus, the burden falls on Mapco in this case to allege facts sufficient to show that *Noerr–Pennington* immunity did not attach to plaintiffs' actions.

642 (1972). *Mid–Texas Communications v. AT & T,* 615 F.2d 1372, 1382 (5th Cir.), *cert. denied,* 449 U.S. 912, 101 S.Ct. 286, 66 L.Ed.2d 140 (1980).[10]

The source of the *Noerr–Pennington* doctrine is mixed. On the one hand, the immunity from antitrust liability granted to petitioners of governmental bodies stems from the judicial recognition that "the antitrust laws, tailored as they are for the business world, are not at all appropriate for application in the political arena." *City of Columbia v. Omni Outdoor Advertising, Inc.,* — U.S. at ——, 111 S.Ct. at 1354 (quoting *Noerr,* 365 U.S. at 141, 81 S.Ct. at 531). Thus, *Noerr–Pennington* immunity can be said to spring directly from a construction of the Sherman Act. *See Coastal States Marketing,* 694 F.2d at 1364–1365. On the other hand, the Court in *California Motor Transport* recognized the First Amendment underpinnings of the doctrine, stating that:

> it would be destructive of rights of association and petition to hold that groups with common interests may not, without violating the antitrust laws, use the channels and procedures of state and federal agencies and courts to advocate their causes and points of view respecting resolution of their business and economic interests vis-a-vis their competitors.

404 U.S. at 510–511, 92 S.Ct. at 612. *See also Feminist Women's Health Center, Inc. v. Mohammad,* 586 F.2d 530, 542 (5th Cir.), *cert. denied,* 444 U.S. 924, 100 S.Ct. 262, 62 L.Ed.2d 180 (1979) ("[T]he First Amendment right of competitors to join in petitioning courts and administrative bodies entails the right to band together for purposes of supporting litigation.").

On its face, Mapco's Sherman Act counterclaim appears barred by the *Noerr–Pennington* doctrine: the *raison d'etre* of plaintiffs' alleged conspiracy was to threaten and ultimately initiate litigation against Mapco under the AMFMA in an attempt to get Mapco to cease its below-cost sales of gas. Mapco, however, contends that the *Noerr–Pennington* doctrine does not apply to plaintiffs' actions because not only did plaintiffs file a lawsuit against Mapco, they also "used the threat of litigation repeatedly with a number of competitors as a method of coercing anti-competitive pricing." Mapco's Reply Brief at 18. Thus, Mapco contends that plaintiffs are not entitled to *Noerr–Pennington* immunity because (a) they acted with an anti-competitive purpose and (b) they prefaced their initiation of litigation against Mapco with threats of litigation, and have threatened other competitors with similar litigation.

### The "Sham" Exception to Noerr–Pennington Immunity

 Courts have developed an exception to *Noerr–Pennington* immunity to address "situations in which a publicity campaign, ostensibly directed toward influencing government action, is a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor." *Noerr,* 365 U.S. at 144, 81 S.Ct. at 1533. This so-called "sham" exception subjects to anti-trust liability "a defendant whose activities are 'not genuinely aimed at procuring favorable government action' at all, *Allied Tube & Conduit Corp. v. Indian Head, Inc.,* 486 U.S. 492, 500 n. 4, 108 S.Ct. 1931, 1937, n. 4, 100 L.Ed.2d 497 (1988), not one 'who "genuinely seeks to achieve his governmental result, but does so through improper means," ' *Id.* at 508, n. 10, 108 S.Ct. at 1941, n. 10 [citations omitted]." *City of Columbia v. Omni Outdoor Advertising, Inc.,* — U.S. at ——, 111 S.Ct. at 1354. *See also Coastal States Marketing,* 694 F.2d at 1372 ("[L]itigant should enjoy immunity from the antitrust laws so long as a genuine desire for judicial relief is a significant motivating factor underlying the suit"); *Video Intern. Production v. Warner Amex Cable Com.,* 858 F.2d 1075, 1082 (5th Cir.1988) (noting that sham exception "comes into play where the party petitioning the government is not at all serious about the object of that petition,

---

**10.** The Eleventh Circuit, in the *en banc* decision *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

but engages in the petitioning activity merely to inconvenience its competitors"). The burden remains on Mapco to establish that plaintiffs' actions fall within the "sham" exception. *See* note 8, *supra; Hospital Building Co. v. Trustees of Rex Hospital,* 791 F.2d 288, 292 (4th Cir.1986).

Mapco's arguments against attaching *Noerr–Pennington* immunity to plaintiffs' actions do not justify application of the "sham" exception. Regarding Mapco's claim that plaintiffs acted with an anti-competitive purpose, it is axiomatic that actions taken with an anti-competitive purpose or intent remain insulated from anti-trust liability under the *Noerr–Pennington* doctrine. *Pennington,* 381 U.S. at 670, 85 S.Ct. at 1593. *See St. Joseph's Hospital v. Hospital Corp. of America,* 795 F.2d 948, 955 (11th Cir.1986); *Coastal States Marketing,* 694 F.2d at 1363. Regarding Mapco's claim that plaintiffs' concerted and repeated threats of litigation constituted a violation of the antitrust laws, it is clear that such threats, no less than the actual initiation of litigation, do not violate the Sherman Act:

> [g]iven that petitioning immunity protects joint litigation, it would be absurd to hold that it does not protect those acts reasonably and normally attendant upon effective litigation. The litigator should not be protected only when he strikes without warning. If litigation is in good faith, a token of that sincerity is a warning that it will be commenced and a possible effort to compromise the dispute.

*Coastal States Marketing,* 694 F.2d at 1367. *St. Joseph's Hosp.,* 795 F.2d at 955; P. Areeda and H. Hovenkamp, *supra,* at § 203.5. Indeed, there is no indication from the record that plaintiffs did not bring their lawsuit against Mapco to win, or that their goal was anything but a favorable decision from the courts. *See City of Columbia,* —— U.S. at ——, 111 S.Ct. at 1354.[11]

■ Mapco all but concedes that the plaintiffs' lawsuit cannot be deemed a sham.[12] Mapco's Brief at 43. Rather,

---

11. Mapco claims it already has been injured by plaintiffs' litigation activities because of the stipulation entered into by the parties in 1988, pursuant to which Mapco raised its prices to at-cost levels and suffered considerable losses in revenues. Mapco contends that these losses derive not from the outcome of the litigation but from the coercion and duplicity of plaintiffs, and reflect the degree to which plaintiffs sought to inflict injury on Mapco through the litigative process itself, rather than through the outcome they sought from that process. Mapco's position is unavailing. Mapco cannot allege that plaintiffs did anything but "use the adjudicatory process to obtain a favorable outcome." *St. Joseph's Hosp. v. Hospital Corp. of America,* 795 F.2d at 955. Such use is protected under the *Noerr–Pennington* doctrine, given that the plaintiffs "were within their rights to use every available legal means" to succeed in the litigation. *Id.* Further, Mapco cannot treat as abuse of the judicial process the entry of a stipulation to which the parties voluntarily agreed, regardless of the injurious effect it had on Mapco's business.

12. We note that the Supreme Court recently has granted certiorari in a case involving application of the "sham" exception to *Noerr–Pennington* immunity. *Columbia Pictures Industries, Inc. v. Professional Real Estate Investors, Inc.,* 944 F.2d 1525 (9th Cir.1991), *cert. granted* —— U.S. ——, 112 S.Ct. 1557, 118 L.Ed.2d 206

(1992). In that case, the Ninth Circuit rejected the defendant-counterclaimant's contentions that a lawsuit could fall under the "sham" exception if the plaintiff "did not honestly believe that [its] claim was meritorious," 944 F.2d at 1530, and that the question of a plaintiff's subjective intent in bringing suit was a question of fact precluding summary judgment. The Ninth Circuit, declining to adopt the approach taken by the Fifth Circuit in *In re Burlington Northern,* 822 F.2d 518, 529 (5th Cir.1987), held that a suit brought with probable cause did not fall within the "sham" exception, and that:

> an antitrust plaintiff must make a two-part showing to support a finding of sham: (1) that the suit is baseless—a legal question [citations omitted]; and (2) that the suit was brought as part of an anticompetitive plan external to the underlying litigation—a question of fact.

*Columbia Pictures,* 944 F.2d at 1532. In this case, Mapco has presented no facts to suggest that the plaintiffs' lawsuit was brought as part of an anticompetitive plan *external to the underlying litigation,* and therefore has failed to satisfy the second prong of the Ninth Circuit's test. *See supra* at 1557–1558, 1559; *infra* at 1562. Mapco has also failed to satisfy the first prong of that test, insofar as the plaintiffs' AMFMA claims, even if ultimately unsuccessful, do not lack a reasonable basis in fact or law. *See Opdyke Inv. Co. v. City of Detroit,* 883 F.2d 1265,

Mapco contends that under the Seventh Circuit's decision in *Premier Electrical Construction Co. v. National Electrical Contractors Association,* 814 F.2d 358 (7th Cir.1987), litigation need not be a sham to allow antitrust liability. *Premier* involved a contract between an electrical contractor trade association and the electrical worker trade union, AFL–CIO. This contract had required the union to obtain, as part of any collective bargaining agreement it entered into with an electrical contracting firm not in the trade association, a contribution of 1% of the firm's gross payroll to the trade association's financial fund. The trade association had sued in state court an independent electrical contractor that refused to give up 1% of its gross payroll to the fund. The association had then voluntarily dismissed its suit after a federal court had held the union-trade association contract to be unlawful *per se* under section 1 of the Sherman Act. The defendant in the state lawsuits then brought suit in federal court seeking as antitrust damages the trebled costs it incurred in defending the voluntarily dismissed state lawsuits. The trade association defended by arguing that plaintiffs' action was barred by *Noerr–Pennington* immunity.

The Seventh Circuit held that the award of trebled litigation costs incurred in defending a lawsuit designed to enforce a price-fixing conspiracy did not violate the *Noerr–Pennington* doctrine. Mapco contends that *Premier* is analogous to this case. We disagree. In *Premier,* the court of appeals observed that the institution of state court litigation against the Sherman Act plaintiff (the recalcitrant independent electrical contractor) could furnish the source of the antitrust injury suffered by the contractor, even if it could not provide a basis for a Sherman Act violation under the *Noerr–Pennington* doctrine. *Premier Elec. Const. Co.,* 814 F.2d at 373. The court observed that the contract between the union and the trade association, which the trade association sought to enforce by bringing suit in state court, furnished the Sherman Act violation. *Id.* at 372.

In this case, conversely, Mapco alleges that the plaintiffs' concerted threats and institution of litigation themselves violated the Sherman Act, as well as providing the source of the antitrust injury. Indeed, Mapco does not allege any facts independent of plaintiffs' pre-litigative and litigative activities to establish that a conspiracy in violation of the Sherman Act took place. Unlike *Premier,* in which the state court lawsuits brought by the trade association were intended to enforce a contract that was unlawful *per se* under the Sherman Act, there is no predicate act in this case that constitutes an independent violation of the antitrust laws; rather, the AMFMA—a lawfully enacted statute—furnished the basis for plaintiffs' litigative efforts. Although adherence to the Seventh Circuit's opinion in *Premier* might permit us to use the costs incurred by Mapco in defense of plaintiffs' AMFMA claim as a measure of their antitrust injury,[13] our analysis here stops short of the antitrust injury inquiry. Nothing in *Premier* or any other case suggests that a conspiracy to use in good faith the adjudicative process to achieve anti-

1273 (6th Cir.1989) (unsuccessful lawsuit not a sham where the trial court did not treat the theory as frivolous and the antitrust plaintiffs did not contend that the theory of the underlying case was so farfetched as to warrant the imposition of sanctions against the attorneys who brought it.)

Even under the subjective standard rejected by the Ninth Circuit, Mapco cannot prove that the plaintiffs' activity in this case falls within the "sham" exception. Although Mapco alleged in its counterclaim that "[plaintiffs] have instituted litigation against [Mapco] not to secure appropriate judicial relief but, rather, to force [Mapco] to increase the price at which it sells gasoline ...", R3–68–¶ 14, Mapco has failed to sustain its burden on summary judgment of presenting evidence that supports these allegations of bad faith. There is simply no evidence in the record to suggest that the plaintiffs did not honestly believe that their claims under the AMFMA were meritorious. Thus, regardless of the disposition of *Columbia Pictures* in the Supreme Court, the "sham" exception to *Noerr–Pennington* immunity does not apply in this case.

13. We are, of course, not bound by *Premier,* and express no opinion as to whether we should in fact adhere to the reasoning of the Seventh Circuit on the issue of litigative costs as a source of antitrust injury.

competitive goals violates the Sherman Act.

Thus, we hold that neither the "sham" exception to the *Noerr–Pennington* doctrine nor the Seventh Circuit's analysis in *Premier* applies in this case to strip the plaintiffs of immunity from Sherman Act liability under that doctrine. Accordingly, we affirm the district court's grant of summary judgment to the plaintiffs on that issue.

### B. Mapco's AUTPA Counterclaim

■ Mapco's AUTPA counterclaim is nothing more than a recital of the allegations contained in its federal antitrust law counterclaim. R3–68–¶¶ 24, 25. As noted *supra*, the *Noerr–Pennington* doctrine rests in large part on the general First Amendment guarantees of freedom to petition and freedom of association. *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 741, 103 S.Ct. 2161, 2169, 76 L.Ed.2d 277 (1983) ("the right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances"); *California Motor Transport*, 404 U.S. at 510–511, 92 S.Ct. at 612; *Feminist Women's Health Center*, 586 F.2d at 542. *See also NAACP v. Button*, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963). We will not construe the AUTPA to treat as unfair trade practices concerted activity that is constitutionally protected. *Dale Baker Oldsmobile v. Fiat Motors of North America*, 794 F.2d 213, 221 (6th Cir.1986) (noting that state statute that has not been authoritatively construed by state court should be construed by federal court in manner that will avoid consti-

tutional questions). We therefore affirm the district court's grant of summary judgment on Mapco's counterclaim under AUTPA.[14]

### C. Mapco's Claim Under the AMFMA

■ We also affirm the district court's grant of summary judgment on Mapco's counterclaim under the AMFMA. In its counterclaim, Mapco specifically alleged that plaintiffs violated section 6 of the AMFMA by "sell[ing] motor fuel of particular grade to themselves and to their affiliated stations at prices which are substantially lower than [plaintiffs] charge other persons on the same day and on the same level of distribution." The district court held that Mapco failed to establish a causal nexus between plaintiffs' alleged violations of the AMFMA and Mapco's alleged injury. We agree.

As the district court noted, section 17 of the AMFMA states that "any persons injured as a result of an act or practice which violates this chapter may bring a civil action for appropriate relief. ..." Ala.Code 8–22–17.[15] In this case, Mapco alleges that plaintiffs sold gas at wholesale at discriminatory prices, charging its retail affiliates less than other of their customers. Mapco was not one of plaintiffs' customers, nor was it a wholesale competitor of the plaintiffs. The injuries Mapco claims as a result of such discriminatory pricing—for instance, loss of revenues resulting from plaintiffs' efforts to "squeeze" Mapco out of business so that wholesale and retail prices could be raised—bear no direct causal relationship to plaintiffs' alleged practice of discriminatory pricing, given that Map-

---

**14.** We reach the constitutional issue only because we do not agree with the district court that the AUTPA is only penal in nature and does not provide for a private cause of action. The Alabama Supreme Court's decision in *Valley Heating, Cooling Electric Co., Inc. v. Alabama Gas Corporation*, 286 Ala. 79, 237 So.2d 470 (1970), recognizes the availability of a private cause of action under AUTPA.

**15.** The requirement that a plaintiff must have been injured *as a result* of a defendant's violations of the AMFMA functions as a kind of antitrust injury requirement, *Brunswick Corp. v. Pueblo Bowl-O-Mat*, 429 U.S. 477, 489, 97 S.Ct.

690, 697, 50 L.Ed.2d 701 (1977), and "ensures that the harm claimed by the plaintiff corresponds to the rationale for finding a violation of the antitrust laws in the first place." *ARCO*, 495 U.S. at 354, 110 S.Ct. at 1900. Indeed, Ala.Code § 8–22–17 is very similar to Clayton Act section 4, which establishes the federal antitrust injury requirement. Other courts have construed state antitrust laws to contain antitrust injury requirements similar to that of the Clayton Act. *E.g., Ghem v. Mapco Petroleum*, 767 F.Supp. 1418, 1423 (M.D.Tenn.1990) (finding antitrust injury requirement in Tennessee Petroleum Trade Practices Act).

co, neither a wholesale competitor nor a retail customer of the plaintiffs, was free to charge whatever price it wished regardless of plaintiffs' actions. Thus, Mapco has failed to show that it was injured as a result of plaintiffs' allegedly illegal behavior and consequently does not have standing to bring an action against plaintiffs under the AMFMA. We therefore affirm the court's grant of summary judgment on Mapco's counterclaim under that statute.

## V. PLAINTIFFS' MOTION FOR RULE 11 SANCTIONS

Plaintiffs appeal the district court's denial of their motion for Rule 11 sanctions relating to Mapco's filing of its counterclaim. We review the district court's denial of plaintiffs' motion for abuse of discretion. *Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, ——, 110 S.Ct. 2447, 2461, 110 L.Ed.2d 359 (1990).

This court considered the standard by which a district court should assess a motion for Rule 11 sanctions in *Pelletier v. Zweifel*, 921 F.2d 1465, 1514 n. 88 (11th Cir.1991), in which we stated:

> In assessing Rule 11 sanctions, a court first determines whether the party's claims are objectively frivolous—in view of the facts or law—and then, if they are, whether the person who signed the pleadings should have been aware that they were frivolous, i.e., whether he would have been aware had he made a reasonable inquiry. If the attorney did not make a "reasonable inquiry," then the court must impose sanctions despite the attorney's good faith belief that the claims were sound. With regard to the reasonableness of the party's inquiry into the pleading's factual basis, a court may consider whether the signing attorney accepted the case by referral from another member of the bar; the time available for investigation; the extent of the attorney's reliance on his client's version of the facts; and the extent to which factual development requires discovery. With regard to the reasonableness of a pleading's legal basis, a court may con-

sider the time available to prepare the pleading; the complexity of the legal issues; the plausibility of the argument; and whether the party is appearing pro se.

In this case, the district court concluded that Mapco's counterclaims were reasonable under the circumstances, given that Mapco's claims, while meritless, were not frivolous, and given the complexity of the facts and legal issues involved. R12–215–2. We agree.

Plaintiffs contend that Mapco's counterclaim makes no economic sense, in that Mapco could not have been injured by plaintiffs' conspiracy to raise gasoline prices. In essence, however, Mapco conceded that a horizontal minimum price-fixing conspiracy, standing alone, would not injure them in a manner for which the federal antitrust laws (or the AMFMA) provide redress. Mapco contended on appeal, however, that "[p]laintiffs [not only] engaged in a price-fixing conspiracy, but also ... used anti-competitive means, e.g. vexatious and retaliatory litigation designed solely to coerce, to obtain an increase in retail gas prices. The purpose and effect of this conspiracy was to force Mapco to abandon its policy of pricing a penny below its major branded competitors. For this reason, Mapco had no ability to benefit from its competitors' conspiracy by charging a lower price." Brief of Mapco at 38. Thus, the linchpin of Mapco's argument that it suffered antitrust injury is that it was forced to endure the expense of vexatious litigation, and that it was therefore forced to capitulate to the plaintiffs' price fixing conspiracy and to abandon, to its financial detriment, its traditional pricing practices of selling gas one to two cents below its branded competition. Mapco further alleges that the plaintiffs were able to raise gasoline prices *after* Mapco began to lose revenues.

In making this argument, Mapco attempted to rely on the Seventh Circuit's decision in *Premier, supra,* which, it argued, carved out an exception to *Noerr–Pennington* immunity in the litigation arena. Although we have held that this posi-

tion is unavailing, *see supra* at 1558–1561, it is not frivolous, especially given undisputed evidence that plaintiffs did indeed threaten and ultimately initiate joint litigation in an attempt to enforce the provisions of the AMFMA.

Assuming *arguendo* that Mapco's counterclaims were frivolous, the district court did not abuse its discretion in denying plaintiffs' motion. As this court noted in *Pelletier, supra,* the question whether the person who signed the pleadings should have been aware that they were frivolous must be answered with recourse to the type of case at issue. The level of inquiry necessary in a given case depends on the complexity of the issues and the need for and availability of discovery. This case presents issues of great complexity and involved an acrimonious struggle between the parties for access to the information relevant to each party's claims. We cannot say that Mapco failed to make a reasonable inquiry into the factual and legal basis of its counterclaims in light of the obstacles it faced. We therefore affirm the district court's denial of plaintiffs' motion for sanctions.

## VI. PLAINTIFFS' AMFMA CLAIM

 It appears to the United States Court of Appeals for the Eleventh Circuit that this issue involves questions of Alabama law that are dispositive of the cause, but unanswered by controlling precedent of the Supreme Court of Alabama. We therefore certify the following questions for resolution by the highest court of Alabama:

(1) DOES THE AMFMA REQUIRE INJURY TO COMPETITION AS A PREREQUISITE TO LIABILITY UNDER THAT ACT, OR DOES INJURY TO COMPETITORS SUFFICE TO ESTABLISH SUCH LIABILITY?

(2) IF INJURY TO COMPETITION RATHER THAN TO COMPETITORS IS A PREREQUISITE TO LIABILITY UNDER THE AMFMA, WHAT IS THE RELEVANCE OF A DEFENDANT'S MARKET SHARE IN DETERMINING THE EXISTENCE OF INJURY TO COMPETITION?

(3) IS LACK OF INTENT TO INJURE COMPETITION AN AFFIRMATIVE DEFENSE, PERMITTING SUMMARY JUDGMENT ON THAT ISSUE UNDER THE AMFMA?

(4) CAN A DEFENDANT UNDER THE AMFMA INVOKE THE "MEETING COMPETITION" DEFENSE CONTAINED IN SECTION 8 OF THAT STATUTE WHEN THE DEFENDANT PRICES MOTOR FUEL ONE TO TWO CENTS BELOW THE PRICE SET BY ITS COMPETITORS?

We do not intend the particular phrasing of these questions to limit the Supreme Court of Alabama in its consideration of problems raised by plaintiffs' AMFMA claim. In a similar vein, our recital of the contentions of the parties is intended to illustrate the nature of the issues and is not intended to substitute for the full statement of contentions by counsel. To assist consideration of the issues, the briefs of the parties and the entire record shall be transmitted to the Supreme Court of Alabama.

## VII. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment on Mapco's counterclaims, as well as the court's denial of plaintiffs' motion for summary judgment. We CERTIFY the issue of plaintiffs' claim under the AMFMA to the Alabama Supreme Court for resolution.