**Richard JONES and Gail Jones**

v.

**INTERNATIONAL RIDING HELMETS, LTD.; A. Plastino & Sons, Ltd. a/k/a Plastino & Sons, Ltd. and Plastino, Inc.; Augustino Plastino; Miller's Harness, Inc.**

Civ. No. 1:91-cv-1533-ODE.

United States District Court, N.D. Georgia, Atlanta Division.

Nov. 17, 1992.

---

Barry L. Roseman, Smolar & Roseman, Atlanta, Ga., for Richard Jones and Gail Jones.

Henry D. Fellows, Jr., Martha McGhee Glisson, Hurt Richardson Garner Todd & Cadenhead, Atlanta, Ga., for International Riding Helmets, Ltd.

Benjamin Louis Weinberg, Jr., Long Weinberg Ansley & Wheeler, Atlanta, Ga., Robin Peek Lourie, Sharon W. Ware & Associates, Tucker, Ga., for Soyo Intern. Ltd.

Charles M. Goetz, Jr., Federal Goetz & Cronkwright, Atlanta, Ga., for Miller's Harness Inc.

## ORDER

ORINDA D. EVANS, District Judge.

This civil personal injury and product liability action is before the court on: (1) Defendant Miller's Harness's motion for summary judgment; (2) Plaintiff's motion for extension of time to respond to Defendant International Riding's motion for sanctions; (3) Defendant International Riding's motion for sanctions; (4) Plaintiff's motion to allow withdrawal of admissions; and (5) Defendant International's motion for leave to file supplemental affidavit.

The facts giving rise to this litigation are basically as follows. Plaintiffs' minor daughter, Jessica, was injured in a horseback riding incident when another horse collided with Jessica's horse, throwing her to the ground. Plaintiffs' complaint indicates that although Jessica was wearing a hunter-type riding helmet at the time of the accident, she suffered serious brain damage from the fall. Complaint, ¶ 7.

Plaintiffs subsequently brought this action against several manufacturers and a distributor of riding helmets for negligence and breach of warranty, claiming that the helmet worn by Jessica was unreasonably dangerous and defective. Although Plaintiffs knew where they purchased the helmet, they were uncertain as to who manufactured or distributed it, necessitating claims against several parties possibly responsible for the helmet's manufacture or distribution.

(1) The court will first turn to Defendant Miller's Helmet's (Miller's) motion for summary judgment. Miller's argues that Plaintiffs have no evidence establishing that it distributed the helmet worn by Jessica, and thus no genuine issue of material fact exists as to its liability. Plaintiffs have not responded to this motion for summary judgment. Under Local Rule 220–1(b)(1), therefore, the motion is deemed unopposed and is GRANTED.

(2) The next motion before the court is Plaintiffs' motion for an extension of time in which to file a response to Defendant International's motion for sanctions. Plaintiffs request an extension through July 6, 1992. In an order dated July 9, 1992, however, the court extended the time for Plaintiffs to respond to the motion for sanctions until July 13, 1992, at which time a response was served. The pending motion for extension of time, therefore, is DISMISSED AS MOOT.

(3) The third motion before the court is Defendant International's (International) motion for sanctions. On June 4, 1992, the court granted International's motion for summary judgment following Plaintiffs' failure to respond. Subsequently, on June 10, 1992, International moved this court to impose sanctions upon Plaintiffs pursuant to Fed.R.Civ.P. 11, 28 U.S.C. § 1927, and the inherent power of the court to manage its affairs.

The court will first consider International's motion for sanctions under Fed. R.Civ.P. 11. Rule 11 indicates that

The signature of an attorney or party [on a pleading, motion, or other paper of a party represented by an attorney] constitutes a certificate by the signer that the signer has read the pleading motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

In the Eleventh Circuit, a court confronted with a motion for Rule 11 sanctions first determines whether the party's claims are objectively frivolous—in view of the facts or law—and then, if they are, whether the person who signed the pleadings should have been aware that they were frivolous, i.e., whether he would have been aware had he made a reasonable inquiry. If the attorney did not make a "reasonable inquiry," then the court must impose sanctions despite the attorney's good faith belief that the claims were sound.

*McGuire Oil Co. v. Mapco, Inc.*, 958 F.2d 1552, 1563 (11th Cir.1992) (quoting *Pelletier v. Zweifel*, 921 F.2d 1465, 1514 n. 88 (11th Cir.1991)).

International argues that various conduct by Plaintiffs, including filing the complaint, refusing to dismiss the action, and demanding to depose International's president, supports Rule 11 sanctions. Rule 11, however, only applies to conduct associated with papers signed and filed with the court. *See, e.g., Pelletier v. Zweifel*, 921 F.2d 1465, 1514 (11th Cir.1991) (indicating that three types of conduct support Rule 11 sanctions: "(1) when a party files a pleading that has no reasonable factual basis; (2) when a party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; and (3) when the party files a pleading in bad faith for an improper purpose"). The only pleading involved in International's motion for sanctions is the original complaint. The court's Rule 11 analysis, therefore, will focus on

Plaintiff's conduct with regard to the complaint.

██ International contends that Plaintiffs were specifically informed before and after filing the complaint that the company was not incorporated until 1986 and therefore could not have manufactured Jessica's helmet, which was allegedly purchased in 1985. Despite this knowledge, Plaintiffs continued with the litigation. According to International, therefore, although Plaintiffs knew that the company was not a proper party to the action, they subjected it to vexatious and unnecessary litigation, rendering an award of sanctions appropriate.

In response, Plaintiffs argue that although they knew of International's 1986 incorporation date, they were unsure at the time they filed their complaint whether the helmet was purchased in 1985 or 1986. Notwithstanding the 1986 date of incorporation, therefore, International conceivably could have manufactured a helmet worn by Jessica and bought in 1986. To support this response, Plaintiff's counsel states that Gail Jones indicated before the complaint was filed that the helmet might have been purchased in 1986. *See also* Uncertified excerpts of June 28, 1991 Deposition of Gail Jones, Civil Action File No. 90–VS–17625E, tendered and authenticated by Barry Roseman, at 107 (indicating the helmet was purchased "[a]bout '86, something like that"). In addition, before litigation began, Plaintiffs' investigator questioned the retailer who sold Plaintiffs the helmet. As indicated by the retailer, she generally buys from two manufacturers, "Lexington Safety Products," formerly "Helmets, Incorporated," and "Helmets International," as well as one distributor, "Millers." *See* Transcript attached as Exhibit II–A to Affidavit of Barry L. Roseman. According to Plaintiffs' counsel, the retailer might have meant "International Riding Helmets," rather than "Helmets International." Furthermore, Plaintiffs' investigator conducted an interview before the filing of the complaint with a "confidential informant with significant expert credentials," who was "99% sure that Jessica's helmet[ ] ... [was] manufactured by International Riding Helmets, Ltd." *See* Memorandum attached as Exhibit III–C to Roseman Affidavit.

Despite the effort by Plaintiffs' counsel to show that an investigation took place, the court is unable to accept counsel's assertion that he was uncertain as to the helmet's date of purchase. At the time Plaintiffs served their complaint, they also served "Interrogatories and Requests for Production" on Defendants.[1] Each interrogatory and request for production focuses on the time period from January 1, 1980 to December 31, 1985. Furthermore, Request for Production No. 5 asks for "documents concerning insurance coverage that might exist for an injury occurring in 1989 resulting from a defectively manufactured helmet purchased in Mississippi in 1985." Plaintiffs' response to International's motion for sanctions, at 11. Plaintiffs have failed to adequately explain why their production requests indicate that the helmet was bought in 1985 if the purchase might

---

**1.** The court has not reviewed a certificate of service indicating exactly when Plaintiffs served their Interrogatories and Requests for Production on Defendants. In its unopposed and previously granted motion for summary judgment, however, International indicated that "plaintiffs served with the Complaint 'Interrogatories and Requests for Production' directed to all defendants." International's Brief in support of summary judgment, at 2. Furthermore, the first page of the Interrogatories and Requests for Production states that

pursuant to the Federal Rules of Civil Procedure, Rule 33, you are required to answer the following Interrogatories separately and individually under oath and then serve your answer on the forty-fifth (45th ) day after ser-

vice upon you. Pursuant to Rule 34 of the Federal Rules of Civil Procedure, you are required to provide the documents requested to the undersigned on the forty-fifth (45th) day after service of process upon you.

Under Fed.R.Civ.P. 33 and 34, parties generally have only thirty days to serve answers or responses to interrogatories or production requests. A defendant, however, "may serve answers or objections within 45 days after service of the summons and complaint upon that defendant." Fed.R.Civ.P. 33(a); *see also* Fed.R.Civ.P. 34(b). Plaintiffs' indication that Defendants had forty-five days to respond to the interrogatories and production request leads the court to conclude that the requests were served with the summons and complaint.

also have taken place in 1986. On the contrary, Plaintiffs merely state that "[a] search must begin somewhere," vaguely implying that they intended to ask about helmets manufactured in 1986 in later discovery. From the content of these interrogatories and document requests, however, the court can only infer that at the time Plaintiffs served their complaint, they knew that the time period for possible liability ranged from 1980 to 1985, rather than 1986. Given this conclusion, the court must find that Plaintiffs' claim against International was objectively frivolous. As established conclusively by International, the company was not incorporated at the time this helmet entered the market. Furthermore, International had no corporate relation with any manufacturer which might have given rise to liability before its official date of incorporation.[2] *See* Affidavit of Frank Plastino, ¶¶ 9–10 (submitted with International's motion for sanctions). No basis for a claim against International, therefore, existed at the litigation's inception.

Pursuant to the Eleventh Circuit test regarding Rule 11 sanctions, the court must now consider whether, despite the frivolity of Plaintiffs' allegation against International, Plaintiffs' counsel conducted a reasonable inquiry to determine the propriety of the claim. The court finds Plaintiffs' efforts at investigation to be insufficient. Prior to filing the complaint, Plaintiffs' counsel spoke with Frank Plastino, International's president, who informed him of International's 1986 date of incorporation and that the company was not related to any other previously incorporated manufacturer. Plastino Affidavit, ¶¶ 9–10. Plaintiffs' counsel does not deny that this conversation took place, but asserts that he "was [not] convinced that it was proper to rely on Mr. Frank Plastino's allegation that he was unconnected with the helmet in ques-

tion, since it was unsworn and obviously self-serving." Roseman Affidavit, ¶ 31. The court agrees that Plaintiff's counsel was not bound to "rely" on this conversation with International's president. Through the conversation, however, counsel certainly became aware that International might not have been in existence at the time the helmet was purchased and that, consequently, a claim against International might be wholly improper. Despite this knowledge, Plaintiffs' counsel apparently made no effort to verify International's incorporation date or uncover whether a relationship, giving rise to possible International liability, existed between International and a previously incorporated helmet manufacturer.

The most minimal investigation, such as checking International's certificate of incorporation, would have revealed the 1986 incorporation date. A more extensive investigation might have been needed to discover possible relationships between International and a previously incorporated manufacturer. Plaintiff's counsel, however, has provided this court with no evidence that he even attempted to determine whether Mr. Plastino's allegations of no relationship were correct. Notwithstanding the information provided Plaintiffs by the retailer and the "confidential informant" implicating International, Plaintiffs' counsel was on notice that International might not have been in existence at the time the helmet worn by Jessica was manufactured. Under Rule 11, therefore, counsel bore the responsibility of conducting a reasonable inquiry as to whether International was a proper party to the suit. Plaintiffs' counsel failed to conduct such a reasonable inquiry, rendering Rule 11 sanctions not only appropriate, but mandatory. *See McGuire Oil Co.*, 958 F.2d at 1563 (indicating that if an attorney makes no reasonable pre-filing inquiry,

---

2. Frank Plastino, president of International, worked as a salesman at A. Plastino & Sons, Ltd. (Plastino), another Defendant in this action, prior to International's incorporation. Plastino, owned by Frank Plastino's father, has apparently discontinued business. Several parties have theorized that Plastino actually manufactured the helmet. Because of the father-son relationship between International's president and Plastino's owner, Plaintiffs apparently suspected that, rather than a distinct corporation, International might be a continuation of Plastino. The affidavit submitted by Frank Plastino, however, clearly indicates no relationship exists between International and Plastino or any other company. Plastino Affidavit, ¶ 10.

the court must impose sanctions with regard to frivolous claims).

Rule 11 indicates that, as an appropriate sanction, the court may "include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading ..., including a reasonable attorney's fee." Because Plaintiffs' complaint was improperly filed, International incurred costs ranging from answering the complaint and investigating the claim to preparing motions for summary judgment and for sanctions.[3] Costs and fees incurred in each of these endeavors resulted directly from the filing of the complaint. International's counsel has submitted an affidavit detailing and outlining the costs expended in defending against this suit. The court, having reviewed this itemized list of costs and expenses incurred by International between July 1, 1991 and March 31, 1992, finds expenses and fees in the amount of $16,415.94[4] to be reasonable. *See Fox v. Acadia State Bank*, 937 F.2d 1566, 1571 (11th Cir.1991) ("The rule limits a court that imposes sanctions based solely on the opposing party's attorney's fees to a reasonable fee.") Furthermore, the court concludes that future similar violations of Rule 11 will be most effectively deterred by imposing sanctions in the amount of $16,-415.94 on Plaintiffs' counsel, rather than Plaintiffs. *See, e.g., Mike Ousley Productions, Inc. v. WJBF–TV*, 952 F.2d 380, 382 (11th Cir.1992) ("imposition of the sanction on the attorney rather than the client is sometimes proper 'since it may well be more appropriate than a sanction that penalizes the parties for the offenses of their counsel' "). Plaintiffs' counsel, not Plaintiffs themselves, was responsible for carrying out an appropriate pre-filing investiga-

tion. By imposing such sanctions, the court hopes to deter Plaintiffs' counsel from conducting future litigation in a similar manner and to reimburse International (or its insurance company) for monies reasonably spent in defending against this unnecessary litigation.

International's motion for sanctions, therefore, is GRANTED. Plaintiffs' counsel is DIRECTED to pay International's counsel $16,415.94 within thirty (30) days of the date of entry of this order. International's counsel is DIRECTED to remit this payment, upon receipt, to the appropriate party for reimbursement of costs and fees expended in defending this action.[5]

(4) In the fourth pending motion, Plaintiffs have moved for withdrawal of certain admissions and for permission to amend their response to requests for admissions. On January 28, 1992, International served requests for admissions asking Plaintiffs to admit or deny that they knew, prior to filing the complaint, exactly which manufacturer had produced Jessica's helmet and that this manufacturer was no longer in business. Because Plaintiffs served no response on International, these requests for admissions were deemed admitted under Fed.R.Civ.P. 36(b). In support of its motion for sanctions, International pointed to these admissions as further evidence of the frivolity of Plaintiffs' claim.

Plaintiffs' counsel challenges the use of these admissions to support sanctions, indicating that at the time these requests were served, International's motion for summary judgment was pending and unopposed. According to counsel for Plaintiffs, he believed that these requests "were filed to create an added basis for the summary judgment." Roseman Affidavit, ¶ 41. Be-

---

**3.** The Eleventh Circuit has specifically held that the expenses of pursuing a Rule 11 claim may be included in a Rule 11 sanctions award. *Mike Ousley Productions, Inc. v. WJBF–TV*, 952 F.2d 380, 383–84 (11th Cir.1992).

**4.** The court recognizes that this is a large sum of money. International's counsel, however, informed Plaintiffs' counsel very early in the litigation that International was not a proper party to the action. *See* letter dated August 16, 1991 from Martha McGhee Glisson to Barry L. Rose-

man; letter dated August 22, 1991 from Martha McGhee Glisson to Barry L. Roseman. Plaintiffs' counsel ignored these appeals, electing to continue with this unnecessary litigation.

**5.** Given the decision regarding sanctions under Rule 11, the court need not address International's arguments with regard to 28 U.S.C. § 1927 or the inherent power of the court to manage its affairs.

cause he had decided not to oppose the motion for summary judgment and to allow the claim against International to proceed to judgment, he did not wish to undermine International's efforts to support the motion by denying or explaining any of the matters in the requests for admission. He did not intend, however, to admit through failure to respond "that any improper purpose or inadequate investigation had taken place, and certainly did not intend to admit that [his] clients had done anything wrong." *Id.*

Under Fed.R.Civ.P. 36(b), a court "may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits." Under this standard, withdrawal of admissions is not warranted in this case. The court has already determined that, regardless of these admissions, the prefiling investigation by Plaintiffs' counsel was inadequate and the decision to include International in the complaint was unreasonable, justifying Rule 11 sanctions.[6] Allowing withdrawal of Plaintiffs' admissions at this point will not change the court's Rule 11 analysis or "subserve" resolution of International's motion for sanctions on the merits. Notwithstanding presence of these admissions in the record, the court has determined that sanctions are appropriate in this case. Plaintiffs' motion to withdraw and amend their responses to International's requests for admissions, therefore, is DENIED.

(5) The final motion pending before the court is International's motion for leave to file a supplemental affidavit in support of its motion for sanctions. This motion is unopposed and therefore GRANTED.

Accordingly, the motion for summary judgment submitted by Miller's Harness [19–1] is GRANTED. Plaintiff's motion to extend time to respond to Defendant International's motion for sanctions [28–1] is DISMISSED AS MOOT. Defendant International's motion for sanctions [20–1] is GRANTED. Plaintiff's motion to withdraw admissions [33–1] and amend responses to requests for admissions [33–2] is DENIED. Defendant International's motion for leave to file a supplemental affidavit [38–1] is GRANTED. Plaintiffs' counsel is DIRECTED to pay International's counsel $16,415.94 within thirty (30) days of the date of entry of this order. International's counsel is DIRECTED to remit this payment, when received, to the appropriate party for reimbursement of costs and attorney's fees incurred in defending this action.

SO ORDERED.

**6.** Despite the presence of these admissions in the record, the court would not have been inclined to grant sanctions had Plaintiffs' interrogatories and requests for production not shown that, from the date the complaint was filed, Plaintiffs believed that they purchased the helmet in 1985. The court does not believe that these unanswered requests for admissions, standing alone, could support a claim for sanctions against Plaintiffs.