EBEL, Circuit Judge,
dissenting.
Although I agree with much of the majority opinion, I respectfully dissent from its holding that (1) prelitigation threats, “whether or not they are consummated ... enjoy the same level of protection from liability as litigation itself’ under the First Amendment doctrine of Noerr-Pennington; and (2) “when considering whether prelitigation threats enjoy Noerr-Pennington immunity ... we must apply the two-part sham test” of Professional Real Estate Investors, Inc. v. Columbia Pictures, Inc. (PRE), 508 U.S. 49, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993). Maj. Op. at 1136-37. The first holding is flawed because it assumes that all threats of litigation between private parties constitute petitions to the government (which is solely what Noerr-Pennington protects). The second holding is flawed because PRE determines only whether an acknowledged governmental petition is a sham undeserving of Noerr-Pennington immunity, but does not determine whether purely private communications that never go to the government should be considered a governmental petition in the first place. Therefore, granting Noerr-Pennington immunity to all prelitigation threats that satisfy PRE’s sham test wrongly extends Noerr-Pennington by immunizing a whole host of prelitigation threats that cannot meet even the threshold criteria of facially presenting a petition to the government. Considered together, the majority’s holdings may be read to stand for the proposition that all private correspondence between private parties that threaten objectively reasonable litigation shall be deemed to be petitions to government entitled to Noerr-Pennington immunity. To state this proposition is to refute it.
Starting with fundamentals, the Noerr-Pennington doctrine, which provides immunity for petitions to the government, derives from the First Amendment right “to petition the government for a redress of grievances.” U.S. Const, amend. I (emphasis added). The Supreme Court has established that actual litigation is a form of petitioning the government protected by the First Amendment. See California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508, 510-11, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972) (defendants entitled to Noerr-Pennington for instituting state and federal proceedings because right to petition includes “right of access to the courts”); PRE, 508 U.S. at 60, 113 S.Ct. 1920 (litigation is protected under Noerr-Pennington if it is not sham). However, it is an unwarranted leap neither compelled by the text of the First Amend *1141 ment, nor the Noerr-Pennington line of cases from the Supreme Court or our circuit, to conclude that all purely private correspondence threatening suit constitutes a “petition [to] the government” under the First Amendment.[1]
Indeed, the facts of this case belie any suggestion that the MLBPA actually petitioned the government with regard to the threatening letter at issue here — specifically, the letter to Champs. The MLBPA’s cease-and-desist letter to Champs threatening suit was never sent to the government; did not ask the government for any response or “redress of grievances”; was not even known to the government prior to Cardtoons’ declaratory judgment action against the MLBPA; and did not ever result in any litigation. It seems an unreasonable stretch to shield this purely private correspondence between the MLBPA and Champs under the Noerr-Pennington aegis as a petition to the government.
Besides this textual problem, according Noerr-Pennington immunity to purely private correspondence poses practical problems. First, the government has supervisory power to prevent the misuse of actual petitions to the government. With litigation, for example, a district court has power under Fed.R.Civ.P. 11 to supervise pleadings, motions, and other representations “present[ed] to the court,” and to issue sanctions for violations of the rule. In contrast, the government has much more limited power to regulate the misuse of purely private correspondence because such correspondence will seldom be brought to the government’s attention.
Second, the majority’s extension of Noerr-Pennington immunity to prelitigation threats will prove difficult to implement. How far back in time should Noerr-Pennington immunity extend prior to an actual petition to the government? Litigation is often preceded by lengthy communications of an increasingly acrimonious nature. How early into the process would the majority extend immunity? Would the majority go back to include the first tentative statement of disagreement over the interpretation of a contract, perhaps even before litigation is contemplated? Would it apply Noerr-Pennington even earlier to the structuring of business deals in the first instance, where considerations of potential litigation are often spoken or unspoken factors? Does the word “litigation” have to be explicitly mentioned in the communication in order for it to be privileged, or may it be implied?
Here, all these difficult questions are enormously compounded because no litigation ever actually resulted between the MLBPA and Champs. The threatening cease-and-desist letter from the MLBPA did not at any time — even to today — culminate in an actual petition to the government against Champs. Indeed, Cardtoons suggests that the MLBPA commonly uses such threats of expensive litigation to bully poorly-financed entities who might tarnish the image of professional baseball players — regardless of whether the MLBPA has any intention to petition the government with a follow-up lawsuit. If this claim can be proven, then it escapes me why such private bullying communication should receive Noerr-Pennington immunity as if it were a petition to the government just because it may state some theoretical but objectively supported claim. When a large company has a practice of threatening others in purely private correspondence without any intent or custom to follow through with actual litigation, there is no basis for awarding Noerr-Penning-ton immunity under the fiction that the company has petitioned the government. Granting Noerr-Pennington immunity to this type of correspondence declares open season for companies to engage in libelous, anticompetitive, or otherwise unlawful communications without fear of legal repercussion.
*1142 These textual and practical problems illustrate the imprudence of extending Noerr-Pennington immunity to all preliti-gation threats. Simply put, if all such threats between private parties constitute petitions to the government, as the majority premises, then the First Amendment’s protection of the right “to petition the government” is transmogrified into a generalized constitutional immunity for private disputes not involving the government in any form. Rather than suffer such a revision of the First Amendment, I would revise the majority’s premise.
Noerr-Pennington should protect only prelitigation threats that have a strong and compelling nexus to actual litigation such that the threat may be considered an incipient part of a petition to the government. To prove this nexus, I would require the party invoking Noerr-Penning-ton to show that its prelitigation threat was a(l) good-faith, (2) objectively reasonable, and (3) proximate prologue to actual or imminent litigation.[2]
Each element of this three-part test is essential to properly limit the reach of Noerr-Pennington with respect to prelitigation threats. First, the prelitigation threat must be in good faith to ensure that Noerr-Pennington immunity would not protect a private party who sends a threatening communication without any actual bona-fide intent to petition the government. This good-faith requirement is consistent with all circuit cases applying Noerr-Pennington to threats of litigation, as these cases implicitly require such threats to be in good-faith. See McGuire Oil Co. v. Mapco, Inc., 958 F.2d 1552, 1559-60 (11th Cir.1992) (stating that sham exception subjects to antitrust liability defendant whose activities, including threats of litigation, “are not genuinely aimed at procuring favorable government action at all” (emphasis added; quotations omitted)); CVD, Inc. v. Raytheon Co., 769 F.2d 842, 851 (1st Cir.1985) (“[W]e hold that the threat of unfounded trade secrets litigation in bad faith is sufficient to constitute a cause of action under the antitrust laws, provided that the other essential elements of a violation are proven.” (emphasis added)); Coastal States Marketing, Inc. v. Hunt, 694 F.2d 1358, 1367, 1372-73 (5th Cir.1983) (finding threats of litigation and ensuing litigation protected by petitioning immunity because they were in good faith); Alexander v. National Farmers Org., 687 F.2d 1173, 1200, 1203 (8th Cir.1982) (refusing to grant Noeir-Pennington immunity to “a broad pattern of litigation threats and harassment” where they were not “in good faith” but rather “clearly constitute[d] bad faith unlawful harassment” (emphasis added)); cf. American Potato Dryers v. Peters, 184 F.2d 165, 173 (4th Cir.1950) (in pre-Noerr-Pennington case, holding that “threats of suit ... made in good faith ” were not antitrust violations (emphasis added)).
Furthermore, contrary to what the majority intimates, see Maj. Op. at 1136-37 n. 5, 1139-40, this requirement is consistent with PRE’s two-part sham test. That test engages in a subjective inquiry only if the litigation first is determined to be objectively baseless. See PRE, 508 U.S. at 60, 113 S.Ct. 1920. By its facts and terms, however, PRE applies to litigation, i.e., an actual lawsuit. See id. (“We now outline a two-part definition of ‘sham’ litigation. First, the lawsuit must be objectively baseless.... Only if the challenged litigation is objectively meritless may a court examine a litigant’s subjective motivation.” (emphasis added).) PRE’s sham litigation test determines whether a petition to the government (in lawsuit form) qualifies for Noerr-Pennington immunity. However, PRE provides no guidance on whether or when a prelitigation threat between private parties constitutes as a petition to the government. Hence, before we can apply PRE to determine which prelitigation *1143 threats, as petitions to the government, merit Noerr-Pennington immunity, we first must decide which prelitigation threats amount to petitioning activity. Requiring good-faith in this threshold inquiry, therefore, does not conflict with PRE, as PRE does not come into play until after the prelitigation threat is determined to be a petition to the government.[3] On the other hand, granting Noerr-Pennington immunity to all prelitigation threats that satisfy PRE, without winnowing out threats that cannot qualify as petitions to the government, erroneously extends Noerr-Pennington immunity beyond First Amendment activity.
Second, the objectively reasonable test is necessary to prevent Noerr-Pennington immunity from attaching to prelitigation threats that would have no basis as an actual petition, and therefore should not receive protection as petitioning activity. This element is coextensive with the objective prong of PRE.
Third, the proximity element ensures that Noerr-Pennington would immunize only those communications that are attendant to imminent or actual litigation and consequently may be considered an initial part of the petitioning process. If no petition actually results, it should be more difficult to establish proximity because the party claiming immunity should have to show some intervening cause that aborted an otherwise imminent petition.
Applied to the instant case, the three-part test cannot be met. Although I agree with the majority that the prelitigation threat in the MLBPA’s letter to Champs had an objective basis, I do not believe the record in its undeveloped state allows us to determine whether the MLBPA’s correspondence with Champs was in good-faith or proximate to actual litigation. As Card-toons complains, the district court stayed discovery on the MLBPA’s subjective intent regarding its threats pending summary judgment. I therefore would reverse the district court’s entry of summary judgment in favor of the MLBPA on the ground that the MLBPA enjoyed Noerr-Pennington immunity, and remand to allow Cardtoons to proceed with discovery on the MLBPA’s subjective intent in threatening Champs with litigation, and the proximity of that threat to actual litigation.

. In fact, the majority admits that "[njeither the Supreme Court nor this circuit has directly addressed the issue of whether Noerr-Pen-nington immunity attaches to the mere threat of a law suit.’’ Maj. Op. at 1136.

. This test differs from the majority’s test because the majority would grant Noerr-Pen-nington immunity solely on the ground of an objectively reasonable basis for the threat without also requiring that the threat be in good faith and proximate to actual or imminent litigation.

. As a result, the majority is wrong to imply that PRE. contradicts the earlier circuit cases requiring threats of litigation to be in good faith in order to receive Noerr-Pennington immunity. While PRE may limit those cases to the extent that they also require actual litigation to be brought in good faith without first inquiring into objective baselessness, PRE does not touch upon the subjective test for whether threats of litigation should receive petitioning immunity.